## ARMSTRONG *v.* LOWER *et al.*

(*Supreme Court of Colorado, Spring Term, 1883— On petition for rehearing
—Original Opinion, 3 Colorado Law Reporter, 377*).

MINES AND MINING CLAIMS—POSSESSION. The statute recognizes two
kinds of possession of mining ground; *first*, where the miner, by virtue of
work and improvements, holds the land independent of location statute
as against one having no better right; *second*, where, after discovery, he
makes location under the statute, the law gives him possession of his en-
tire claim as marked on the surface, until he does, or omits to do, some-
thing which in law amounts to abandonment. Failure to comply with the
location statutes in the proper time, opens the portions of the claim not in
actual possession to exploration and location, as though no attempted stat-
utory location had been made. The rulings in the opinion (3 Colorado Law
Reporter, 377), adhered to.

HELM, J.   This application has been urged with more than
ordinary skill and ability; and we have sought to give the
questions presented the careful consideration which the indus-
try of counsel and the importance of the case merit.

We recognized in our opinion the right of petitioners to re-
cover at the former trial of this cause upon proof of prior ac-
tual possession of the premises in dispute.

Under the Federal and State statutes, two kinds of posses-
sion of mining ground are recognized:

*First*—Where the miner, by virtue of work and improve-
ments upon a tract of mineral land, and occupancy thereof,

holds the same independent of location statutes as against one having no better right.

*Second*—Where, after discovering a vein, the miner undertakes to avail himself of the benefits of the location statutes; the law gives him possession of his entire claim as marked upon the surface for the period of 90 days from the date of discovery, provided he post his discovery notice, and within 60 days next after such date, sink his discovery shaft. Having perfected his location by a full compliance with the requirements of the statute, his possession of the entire claim remains until he does, or omits to do, something which in law amounts to an abandonment thereof.

But where he has failed within the proper time to comply with the location statutes, we do not understand that he can, by virtue of actual possession of 100 feet of the lode, hold the entire 1,500 feet thereof, as against one who enters after such failure, and acquires rights in the territory before he has perfected his location. By such failure he forfeits all right to any benefit from his partial compliance with the statutes, except as he may be aided thereby in his proof of actual possession; the remaining 1,400 feet of his lode are open to exploration and location as though he had never attempted to perfect a statutory location thereon. To hold otherwise would largely do away with the usefulness of location statutes, for their principal office is to protect him, prior to patent, in the exclusive use and enjoyment of his lode and surface ground to the full extent of his claim.

These views do not conflict with the authorities cited. The learned Judge, in *Haines* v. *Equator Mining and Smelting Co.*, 2 Colorado Law Reporter, 64, does not pass upon this question; he expressly distinguishes between the position of a purchaser, and that of the locator of a mining claim, and confines his opinion to the former. In *English* v. *Johnson*, 17 Cal., 108, the Court limits the views expressed to cases where no abandonment results from failure to comply with the mining rules or location statutes.

But a small part of the alleged Swallow Tail re-location is in dispute in this action. And the only acts of possession disclosed in the evidence of this disputed territory by petitioners, is the

erecting of their discovery stake at the "old shaft," and the posting of a notice stating where the location work was being done. This we held, and still hold, insufficient to show such *actual possession* of said territory as would enable them to recover the same in this action. Being unable to recover upon their actual possession, they were remitted to their proof of a valid re-location. The construction of their tunnel upon another part of the claim could not avail them, unless their re-location was good. If it were valid, they would hold possession of the disputed territory by virtue thereof; if it were not valid, actual possession was required, which they did not have.

Counsel for appellees, in their original brief, quoted from *Highland Chief* v. *Evans*, 1 Colorado Law Reporter, 217, as follows: "On the public domain of the United States a miner may hold the place in which he may be working, against all others having no better right. But where he asserts title to a full claim of 1,500 feet in length by 300 feet in width, *he must prove a lode extending throughout the claim.*" They italicized the last clause of the quotation, and we certainly understand them as advancing the argument that since the proof did not affirmatively establish the fact that the Verde vein extended to the portion of the Verde claim whereon petitioners had excavated the Swallow Tail discovery tunnel, they were entitled to recover, upon the theory that such territory was vacant and subject to location. And we understand counsel as urging substantially the same proposition upon this petition.

We have discovered no reason for changing the views expressed in our former opinion. Counsel is correct in his statement that the Verde owners are not a party of record, and have nothing to do with this controversy. But a question with reference to the Verde vein was fairly presented under the law, by the evidence and argument. And for the purposes of the decision upon the point under consideration, it was as if the controversy had been between petitioners and the Verde owners. The position of petitioners, who were appellees, was, as we understand it, that appellants should have proven that the Verde vein extends throughout the Verde claim, or at least to the portion thereof whereon was constructed the Swallow Tail

discovery tunnel. Appellants asserted that a valid location of the Verde was established under the pleadings; and that it was for petitioners to prove that the vein departed from the side line or terminated at some point distant from the end line thereof.

If the vein did so depart or terminate, the portion of the claim beyond such point of departure or termination was open to location by petitioners, and the construction of their discovery tunnel thereon was perfectly proper and legal. The question presented was, should appellants be required to prove in the first instance that the Verde vein extended throughout the claim, or should petitioners be compelled to show a departure or termination thereof at some point short of the ground upon which they did their location work.

We agreed with appellants, and placed the burden upon petitioners of proving by a preponderance of evidence, such departure or termination of the Verde vein.

In the discussion of this question in our opinion, we declared that where one has discovered a lode, and performed all of the subsequent acts required to constitute a valid location, he is entitled to the presumption that his vein extends throughout the full length of his claim. Counsel seems to misunderstand the meaning of the language we used. We do not deny that the position of the vein with reference to the location is a fact upon which some proof must appear. It seems to us that upon a critical examination and fair construction, our language will be found not to conflict with this view.

Proof of the essential acts of location, almost necessarily implies some proof as to the position of the lode. We can hardly conceive how one could prove the discovery of his vein, the sinking of his discovery shaft thereto, the erection of his boundary stakes, and the other essential acts of location, without giving evidence of some kind as to the strike of the vein. Such evidence may not affirmatively show its course for more than the distance across the discovery shaft; and though not more than five or six feet of the course be actually determined, yet if the location be made along the vein thus disclosed, projected in either direction, it is *prima facie* suffi-

cient. We may recognize a presumption that the apex of the vein does extend throughout the location.

It may, perhaps, be more accurate for us to omit the objectionable word "presumption" and say that the foregoing facts being proven, the jury may infer therefrom, in the absence of contrary proofs, that the vein extends throughout the entire claim. In other words, that these facts are sufficient, *prima facie,* to establish the remaining fact as to the position of the vein in all those portions of the location wherein it has not been actually traced. But whether we use the word "presumption" or the phrase *"prima facie* proof," the result, so far as concerns the question under consideration in this case, is precisely the same.

The position of the vein is a fact which in many cases must be proven largely by inference and opinion. If the apex thereof crops out along the surface, its strike may be readily traced; but if it be entirely below the surface, it is extremely difficult, and in some cases impossible without the expenditure of large sums of money, to definitely determine its course for a distance of 1,500 feet. And where the prospector has determined that course according to the best information he has been able to obtain in the time allowed, and has expended labor and money in performing all of the acts required to constitute a valid location thereon, we think he is justly entitled *prima facie* to the protection of the location statutes.

These were the views announced in our former opinion, and we are not yet convinced that they are erroneous.

*The rehearing will be denied.*

*Montgomery & Rising* and *J. W. Warren,* for appellants.

*Hugh Butler* and *Platt Rogers,* for appellees.