### THALLMAN et al. v. THOMAS.

(Circuit Court, D. Colorado. July 17, 1900.)

No. 3,795.

MINING CLAIM—CORRECTION OF CALLS.

A patent to a mining claim will not be reformed in equity, so as to make the calls therein correspond with alleged monuments located on the ground, where it appears that for about 16 or 18 years preceding the filing of the bill the alleged monuments were not in place, and there is as much doubt as to where the monuments were first located as there is whether the course is correct.

Charles J. Hughes, Jr., for complainants.
S. R. Fitzgerrald and Thomas, Bryant & Lee, for defendant.

HALLETT, District Judge. Ernest Thallman and another against T. E. Thomas is a bill to correct the calls in a patent to a mining claim. Complainants aver that a mining claim owned by them in the county of Ouray (No. 1,902, and called "Nellie") has courses and distances in the north and south side lines which do not correspond with the monuments as located on the ground; and they desire to have the patent corrected in respect to the courses between corners 1 and 2, and 3 and 4, so that they shall correspond with the monuments. The difference in the course as claimed by the complainants, and as recited in the patent, is 1° 49'. According to the patent, the course from corner No. 1 to corner No. 2 is S., 76° 5' W. As claimed by the complainants, the course should be S., 77° 54' W. The error alleged to be in the courses places the west end of the claim 43 feet south, as to corners 1 and 4, from that which is given by the courses in the patent. The testimony is not much in conflict in respect to what occurred in the location of the corners. The surveyor who surveyed the claim for location in the year 1881 also made the survey for patent in the year 1883. He changed the courses very materially in 1883 from those

which had been given in the first survey in 1881. In neither of the surveys was there any location of the monuments by actual measurement upon the lines of the claim. In other words, the west end corners, 1 and 4, were located by triangulation. The ground is very precipitous from east to west, the claim running up the side of a mountain which is said to be a declivity of 35° or more; and the monuments at the west end are upon ground which is overrun by snow slides nearly every winter, so that stakes put up in the usual manner are swept away the following winter. Indeed, the only corner which seems to be accepted by all parties as capable of ascertainment, and having a bearing tree which would enable them at all times to determine its position, is corner No. 2, which is at the east end of the claim. About that there is no dispute. Mr. Mathis, who made the first and the second surveys, is not very clear whether the corners 1 and 4 were established in 1883, when the patent survey was made. He testifies that they were set up at the first survey, and that the second survey was according to the monuments as first located. Corner No. 1 is also a corner of the Ella claim, which lies west of the Nellie. In locating that corner for the Ella survey, reference was made to the Ella discovery cut, which was 180.7 feet from this corner. Complainants contend that this is the most satisfactory call which can be found for the location of this corner, but it was not made a call at all in the Nellie survey. The calls in that survey are more distant, and entirely different. If those calls be observed, apparently the courses in the patent are correct. No witness testifies, and there is no claim made, that the corner has ever been in place since 1883. The rule that monuments shall control courses and distances is recognized only in cases where the monuments are clearly ascertained. If there be doubt as to the monuments, as well as to the course and distance, there can be no reason for saying that monuments shall prevail, rather than the course given in the patent; and that is this case. There is just as much doubt where this monument was first located as there is whether the course is correct, and therefore it is not possible to say that we shall first determine a doubtful point, as to where the monument was in fact located, and then give it effect to control what is expressed in the patent. Furthermore, it is believed that in any case in which parties claim that they shall hold by monuments, rather than by the description given in the patent, they must maintain the monuments in the position in which they are placed. For some time—something like 16 or 18 years—before this bill was filed, this monument was not in place. Indeed, the complainants did not discover the error in all that time in their survey. Under such circumstances, it is impossible to entertain the bill, and it will be dismissed at the costs of the complainants.